IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONTINENTAL AUTOMOTIVE GMBH and CONTINENTAL AUTOMOTIVE SYSTEMS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> iBIQUITY DIGITAL CORPORATION, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 14-1799 <br><br> JURY DEMANDED |

# COMPLAINT

Continental Automotive GmbH and Continental Automotive Systems, Inc. (collectively "Continental"), through counsel, hereby bring their Complaint against defendant, iBiquity Digital Corporation ("iBiquity"), and allege as follows.

# INTRODUCTION

1. This is an action seeking an injunction preventing iBiquity from asserting infringement of one or more patents iBiquity identified as being technically essential to the HD Radio standard ("the Asserted Patents") and infringed by HD Radio semiconductor devices incorporated into Continental products based on Continental's license to and the exhaustion of iBiquity's patent rights in the Asserted Patents, iBiquity's misuse of the Asserted Patents through its attempts to improperly expand the scope of its patent monopoly by demanding royalties over components not within the scope of the patent claims, or both. Continental additionally seeks a declaration interpreting the Nonexclusive Intellectual Property License for Receiver Technology agreement ("the Agreement") between the parties; an award of monetary damages for

- 1 -

unjust enrichment for past overpayment under the Agreement; an injunction forbidding iBiquity from advertising, advising, or otherwise informing Continental head-end unit component suppliers or customers that Continental is not an iBiquity licensee, breach of a license agreement between Continental and iBiquity, and breach of contract action based on iBiquity's failure to comply with its representation and agreement to license patents allegedly essential to the HD Radio Standard on reasonable and non-discriminatory terms.

## PARTIES

2.     Plaintiff Continental Automotive GmbH is a foreign corporation with its principal place of business in Regensburg, Germany.

3.     Plaintiff Continental Automotive Systems, Inc., is a Delaware corporation with its principal place of business in Deer Park, Illinois.

4.     On information and belief defendant iBiquity is a Delaware corporation with its principal place of business in Columbia, Maryland.

## JURISDICTION

5.     The Court has original jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. §§ 2201, 1331 and 1338 because Continental's relief arises under and necessarily invokes substantial questions of the patent laws of the United States under 35 U.S.C. § 100 *et seq*. The Court has personal jurisdiction over iBiquity by its systematic and deliberate presence in Illinois through its actions managing its HD Radio licensees, including approaching potential licensees, negotiating agreements with broadcasters, semiconductor manufacturers and end unit manufacturers, as well as directing invoices and other communications related to HD Radio to licensees.

**VENUE**

6. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in Chicago, Illinois.

**FACTS**

7. Continental is an original equipment manufacturer for major automobile manufacturers and supplies automobile head-end units for use in a variety of vehicles.

8. Continental's head-end units have a variety of functions, including, among other things, navigation, Bluetooth, telematics and multimedia playback functions such as DVD and CD as well as receiving AM/FM radio and receiving and decoding HD Radio signals. The head-end unit includes a number of electronic circuits to provide these functions, including HD Radio semiconductor components and software.

9. Continental's agreements with automobile manufacturers require Continental to supply head-end units capable of receiving and decoding HD Radio signals.

10. To comply with these requirements, Continental has entered into purchase agreements with third party component manufacturers to buy HD Radio semiconductor components for use in Continental's head-end units.

11. All HD Radio receivers compliant with the National Radio System Committee IBOC standard, including Continental's purchased component circuitry, are alleged by iBiquity to infringe one or more of the claims of one or more of the Asserted Patents owned by iBiquity. A list of the iBiquity patents asserted to be essential to the HD Radio standard is attached as Exhibit A.

12. In order to have its technology adopted as a standard, iBiquity publicly bound itself to the National Radio Systems Committee's requirement that iBiquity license the

Asserted Patents to all manufacturers of HD Radio receivers on reasonable terms and conditions that are demonstrably free of any unfair discrimination in order for iBiquity's HD Radio technology to be included in the Committee's technical standards. A copy of iBiquity's representation to the National Radio Systems Committee is attached as Exhibit B.

13. iBiquity entered into a license agreement under the Asserted Patents with Siemens VDO Automotive Corporation on June 28, 2005. In late 2007, Siemens VDO Automotive Corporation merged with Continental. As a result of this merger, Continental became the successor in interest to Siemens VDO Automotive Corp.'s license agreement with iBiquity granting it the right to make, use or sell the devices embodying the Asserted Patents. A copy of the license agreement is attached as Exhibit C (filed under seal).

14. Continental Automotive Systems Inc. is the current successor to the license agreement. Continental Automotive Systems GmbH manufactures and sells head-end units which incorporate HD Radio semiconductor components and is the Continental entity that has reported sales of HD Radios and paid royalties to iBiquity under the license agreement since the acquisition of Siemens VDO.

15. Continental's license agreement with iBiquity was for an original five year term and was automatically renewable for additional two year terms provided that neither party notifies the other of its intention to terminate the license agreement six months prior to end of the existing renewed term. Continental's license agreement currently is effective until June 28, 2014.

16.     The license requires a quarterly royalty report and a payment from Continental to iBiquity with the payment amount based on invoiced sales of the "Licensed Radio Receiver."

17.     Until May 2013, Continental made royalty payments based on demands by iBiquity that Continental use iBiquity's interpretation of the license agreement or otherwise iBiquity would take action to terminate the license and stop Continental's purchase of HD Radio components and sales of Continental's product to its customers.

18.     Continental, however, recently determined that iBiquity's interpretation of the license agreement and its royalty demands to Continental were incorrect and its royalty demands and threats of termination and possible patent litigation resulted in Continental paying a royalty to iBiquity that was wholly unrelated to the value of the Licensed Radio Receiver sold by Continental to its customers and therefore not "reasonable" in accordance with iBiquity's representation to the standards development organization.

19.     iBiquity has taken the position with Continental that the applicable royalty under the Agreement should be based on the invoiced price of the entire head-end unit sold by Continental to its customers.   iBiquity's flawed interpretation of its own standardized licensing agreement as requiring a royalty based on the entire head-end unit sold by Continental instead of those components implementing the Asserted Patents and its threats of termination of the license agreement and potential patent infringement litigation has resulted in Continental paying more than $1,000,000 in excess payments under the agreement.

20.     iBiquity alleges that it has terminated Continental's license agreement but has not offered reasonable terms as required by its representation to, and agreement with, the

National Radio System Committee and threatened Continental with the possibility of a patent infringement lawsuit if Continental refused to pay a royalty based on the price of the entire head-end unit. iBiquity has further threatened to inform Continental's customers and suppliers that Continental is not a licensee under iBiquity's essential HD Radio patents ostensibly in an effort to prevent Continental from obtaining HD Radio components and precluding its customers from purchasing HD Radios from Continental.

21. In a meeting between Continental and iBiquity on October 29, 2013, iBiquity's Senior Vice President and General Counsel, Albert Shuldiner, advised Continental that the only acceptable royalty under the license agreement must be calculated on the invoiced price of the entire head-end unit instead of the Licensed Radio Receiver components included in the head-end unit sold by Continental.

22. By letter dated November 8, 2013, Albert Shuldiner informed Continental that "Continental is no longer classified as a licensed receiver manufacturer under iBiquity's licensing program. If Continental does not execute a license renewal within sixty (60) days of the date of this letter, iBiquity will begin informing its chip licensees and car companies that use HD Radio technology that Continental is no longer a licensed HD Radio receiver manufacturer." *See* November 8, 2013 letter from A. Shuldiner to June Bradley of Continental attached as Exhibit D.

23. During a December 19, 2013 telephone conference between iBiquity and representatives of Continental, Albert Shuldiner advised Continental that the royalty should be based on the invoiced price of the entire head-end unit to Continental's customer and not on the "Licensed Radio Receiver" components and that any other royalty calculation would result in iBiquity terminating the license agreement.

24. iBiquity has refused to recognize Continental's overpayment and refuses to reimburse or credit Continental any amount of the excess payments in spite of Continental's demands.

25. iBiquity's interpretation of its licensing terms as requiring a royalty payment based on cost of the entire head-end unit and technologies included in the head-end unit that do not infringe iBiquity's Asserted Patents violates its obligation to license the Asserted Patents on reasonable terms, as the demanded royalty amount is an unreasonably high percentage of the unit cost of the HD Radio semiconductor devices and therefore commercially unreasonable.

26. On information and belief, Continental's suppliers of HD Radio semiconductor devices possess a royalty bearing license from iBiquity to make, use or sell HD Radio semiconductor devices embodying the Asserted Patents.

27. On information and belief, Continental's HD Radio semiconductor device suppliers are authorized by iBiquity to sell HD Radio semiconductor devices to Continental and such HD Radio semiconductor devices include software supplied by iBiquity that implements the HD Radio functionality.

## COUNT I
**(Patent Exhaustion)**

28. Continental incorporates paragraphs 1 to 27 as if fully set forth herein.

29. Continental's head-end automotive units incorporate HD Radio semiconductor devices that allegedly practice one or more claims of the Asserted Patents.

30. On information and belief, Continental's suppliers of HD Radio semiconductor devices are iBiquity licensees, including the right to make, use or sell HD Radio

semiconductor devices embodying the Asserted Patents and iBiquity's HD Radio technology and software is used in these components.

31. On information and belief, iBiquity authorizes Continental's suppliers to sell HD Radio semiconductor devices embodying the Asserted Patents to Continental for use in Continental's head-end unit products.

32. The authorized sale of the HD Radio semiconductor devices with iBiquity technology and software embodying the Asserted Patents by iBiquity's licensee to Continental exhausts iBiquity's patent rights in those products.

### COUNT II
### (Patent Misuse)

33. Continental incorporates paragraphs 1 to 27 as if fully set forth herein.

34. Continental's head-end automotive units provide a multitude of functions for a vehicle in addition to receiving HD Radio, such as navigation, AM/FM radio reception, user interface and display of backup cameras, reception and user interface of satellite based radio, telematics, consumer media playback, Bluetooth, wifi and cellular connectivity, and vehicle tracking functionalities.

35. iBiquity has refused to license the Asserted Patents that cover HD Radio functions unless Continental pays a royalty on the entire head-end unit, despite the majority of the head-end unit components being outside the scope of the claims of the Asserted Patents.

36. iBiquity is therefore improperly attempting to expand the scope of its patent monopoly to include unpatented articles through its demands that Continental pay royalties on the value of non-patented features.

## COUNT III
### (Declaratory Judgment of Patent Rights)

37. Continental incorporates paragraphs 1 to 27 as if fully set forth herein.

38. Since 2007, Continental has paid royalties to iBiquity under the terms of the parties' licensee agreement.

39. Further, iBiquity made affirmative statements and promises to the HD Radio community that it would license its standards essential patents under reasonable and non-discriminatory terms. Continental has attempted to license the patents from iBiquity under such terms.

40. Thus, Continental's continued activities are authorized under the U.S. Patent Laws, 35. U.S.C. § 271(a) in view of the rights granted to Continental under the license agreement and in view of iBiquity's RAND commitments.

41. iBiquity has threatened Continental with allegations that Continental is in breach of the parties' license agreement and has refused to negotiate a license under RAND terms.

42. As a result, there exists between the parties a definite and concrete dispute touching the legal relations of the parties having adverse interests, *i.e.,* their rights under the patent laws of the United States.

43. This Court can declare the respective rights of the parties.

## COUNT IV
### (Unjust Enrichment)

44. Continental incorporates paragraphs 1 to 27 as if fully set forth herein.

45. Since 2007, Continental has paid royalties to iBiquity under the parties' license agreement.

46. The license agreement provides for the calculation of the royalty amount using the lesser of two calculations but no less than a certain amount.

47. From August 2007 until May 2013, Continental had been paying royalties using the larger or the two calculations under threat of license termination, loss of supply of HD Radio components, termination of customer sales of HD Radios and potential patent infringement litigation from iBiquity, resulting in an overpayment exceeding $1,000,000 to iBiquity.

48. iBiquity's threats were wrongfully made because iBiquity is obligated pursuant to its representations to the HD Radio standards development committee to license Continental's HD Radio products on reasonable and non-discriminatory terms under iBiquity's patents essential to the HD Radio standard.

49. Continental's overpayment has unjustly enriched iBiquity beyond its bargained for benefit in the license agreement iBiquity drafted. The royalty demanded by iBiquity is unreasonable and not in accordance with iBiquity's representation to the HD Radio standards development committee. It would be inequitable and against good conscience to permit iBiquity to retain such a substantial unjust gain.

### COUNT V
### (Breach of Covenant of Good Faith and Fair Dealing)

50. Continental incorporates paragraphs 1 to 27 as if fully set forth herein.

51. iBiquity is intentionally and purposely preventing Continental from realizing the full benefit under the parties' license agreement and iBiquity's obligations to the HD Radio standards development committee by refusing to recognize or reimburse Continental's royalty overpayments.

52. iBiquity's insistence that Continental pay a per unit royalty based on the price of the entire head-end unit containing technology not covered by iBiquity's Asserted Patents rather than the alternative consideration set forth in the agreement provides, at Continental's expense, iBiquity with a much greater benefit than it bargained to receive.

53. Accordingly, iBiquity's conduct has deprived and continues to deprive Continental of the benefits under the license agreement and iBiquity's representation to the HD Radio standards development committee by requiring Continental to pay a royalty which is not reasonably related to the technology covered by the Asserted Patents.

## COUNT VI
**(Breach of License Agreement Between Continental and iBiquity)**

54. Continental incorporates paragraphs 1 to 27 as if fully set forth herein.

55. Contrary to the plain language of the Continental's license agreement with iBiquity, iBiquity maintains that the agreement has ended and that Continental is no longer a licensed receiver manufacturer.

56. On information and belief, iBiquity has threatened to falsely represent to Continental customers and suppliers that Continental is not a licensee of the Asserted Patents, disrupting and damaging Continental's business relationships.

57. iBiquity's threatened action may disrupt Continental's supply of component parts and its corresponding ability to provide finished goods to Continental customers.

58. iBiquity's termination of the agreement is a breach of contract.

## COUNT VII
**(Promissory Estoppel)**

59. Continental incorporates paragraphs 1 to 27 as if fully set forth herein.

60. iBiquity publicly promised to license its HD Radio receiver patents, including the Asserted Patents, on reasonable terms and conditions to any individual seeking to manufacture HD Radio compliant devices.

61. Continental relied on iBiquity's promise of reasonable licensing terms when it entered into supply agreements with Continental customers to provide head-end units containing HD Radio semiconductor devices.

62. Continental's reliance of iBiquity's public promise of reasonable license terms was foreseeable, as it was made to allow iBiquity's patented technology to be included in technical standards necessary for all HD Radio manufacturers to adhere to.

63. iBiquity contends that Continental's license has lapsed, but has refused and failed to offer Continental any royalty terms other than one based on the price paid by Continental's customers for the entire head-end unit containing an HD Radio receiver circuit.

64. iBiquity's royalty demand rivals the cost of the underlying HD Radio circuit itself, rendering the offered rate not commercially reasonable and is not appropriately related to the technology covered by the Asserted Patents.

65. As a result of iBiquity's failure to offer commercially reasonable licensing terms, Continental has suffered, and will continue to suffer, irreparable harm through the disruption of Continental's supply of component parts and its corresponding ability to provide finished goods to Continental customers, or monetary losses in excess of One Million ($1,000,000.00) Dollars.

## COUNT VIII
**(Breach of Contract with the NRSC)**

66. Continental incorporates paragraphs 1 to 27 as if fully set forth herein.

67. iBiquity formally and publicly committed to the National Radio Systems Committee's patent policy requiring iBiquity to license on reasonable terms patents essential for the manufacture of IBOC compliant devices, including the Asserted Patents.

68. iBiquity's promise created a binding contractual commitment with the NRSC to license the Asserted Patents on reasonable and non-discriminatory terms and conditions.

69. Continental is a third-party beneficiary of iBiquity's commitments to the NRSC, and therefore must be offered a license on reasonable and non-discriminatory terms.

70. iBiquity has only offered to license the Asserted Patents at a royalty rate based on the price to Continental's customers of an entire head-end unit containing significant functionality unrelated to the Asserted Patents, which, when considered with the cost of the HD Radio receiver circuit and royalty rates for similar products, cannot be considered a reasonable royalty rate.

71. Therefore, iBiquity's breach of its contract with the NRSC by failing to offer a reasonable and non-discriminatory royalty rate has and will continue to damage Continental.

## COUNT IX
**(Wrongful Interference with a Business Relationship)**

72. Continental incorporates paragraphs 1 through 27 as if fully set forth herein.

73. Continental has supply agreements with HD Radio component suppliers and with customers for the supply of HD Radio components.

74. iBiquity is obligated to license its Asserted Patents to Continental on reasonable and nondiscriminatory terms in accordance with iBiquity's representation to the HD Radio standards development committee.

75. In knowing and willful disregard of its obligation to license the Asserted Patents on a reasonable and nondiscriminatory basis, iBiquity has terminated Continental's license agreement and wrongfully threatened to require Continental's suppliers not to supply HD Radio components to Continental and wrongfully threatened to inform Continental's customers that Continental was not licensed to supply HD Radio products to its customers and that such customers should not purchase HD Radio products from Continental.

76. iBiquity knows that such threatened statements are erroneous, wrongful and malicious and will wrongfully interfere with Continental's relationships with its suppliers and customers for HD Radio products and are intended solely to cause damage to Continental by requiring Continental to either pay royalties to iBiquity on the entire market value of products and functionalities that are not substantially related to the inventions claimed in the Asserted Patents and are not in accordance with iBiquity's obligation to license the Asserted Patents on reasonable and nondiscriminatory terms.

WHEREFORE, plaintiff Continental prays for the following relief:

1. A permanent injunction forbidding iBiquity from bringing a lawsuit asserting infringement of the Asserted Patents by HD Radio semiconductor devices incorporated into Continental products, or in the alternative a declaration that the Asserted Patents are unenforceable against Continental;

2. A judgment interpreting the terms of Continental's license holding the agreement valid until June 28, 2014 and the royalty rate to be based on less than the entire market value of the head-end unit sold by Continental to its customers, or in the alternative, a reasonable and non-discriminatory royalty;

3. A judgment requiring iBiquity to license Continental under the Asserted Patents on reasonable and nondiscriminatory terms in accordance with iBiquity's representation to the National Radio Systems Committee.

4. A temporary restraining order, preliminary injunction and permanent injunction forbidding iBiquity from advertising, advising, or otherwise informing Continental head-end unit component suppliers or customers that Continental is not an iBiquity licensee;

5. Compensatory damages and/or statutory damages;

6. Restitution in an amount in excess of $1,000,000;

7. Reasonable costs and attorneys' fees;

8. Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiffs request trial by jury.

Dated: March 13, 2014                    Respectfully submitted,

**Continental Automotive Systems Inc. and
Continental Automotive Systems GmbH**

*/s/ Michael Stolarski*

Michael Stolarski
(mstolarski@lathropgage.com)
Kyle Davis (kdavis@lathropgage.com)
Bryan K. Clark (bclark@lathropgage.com)
Macy Skulman
(mskulman@lathropgage.com)
LATHROP & GAGE LLP
155 N. Wacker Dr., Suite 3050
Chicago, IL 60606
Telephone: (312) 920-3300
Facsimile: (312) 920-3301