# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CONTINENTAL AUTOMOTIVE GMBH and CONTINENTAL AUTOMOTIVE SYSTEMS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | 14 C 1799 |
| v. | ) ) | Judge John Z. Lee |
| IBIQUITY DIGITAL CORPORATION, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Continental Automotive GmbH and Continental Automotive Systems, Inc. (collectively "Continental") has sued iBiquity Digital Corporation ("iBiquity") asserting the following nine causes of actions: patent exhaustion (Count I), patent misuse (Count II), declaratory judgment of patent rights (Count III), unjust enrichment (Count IV), breach of covenant of good faith and fair dealing (Count V), breach of license agreement between Continental and iBiquity (Count VI), promissory estoppel (Count VII), breach of contract with the National Radio Systems Committee (Count VIII), and wrongful interference with a business relationship (Count IX). iBiquity has moved to dismiss Counts I, II, and III pursuant Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or, alternatively, under Rule 12(b)(6) for failure to state a claim. iBiquity then argues that, once the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the state law claims.

For the reasons set forth herein, the Court denies Continental's Rule 12(b)(1) motion as to Counts I and II, but grants the motion as to Count III. With respect to Continental's Rule 12(b)(6) motion, because the doctrines of patent exhaustion and patent misuse are defenses and

cannot be asserted as affirmative claims, the Court grants Continental's motion to dismiss with regard to Counts I and II. The Court further declines to exercise supplemental jurisdiction over the remaining claims, Counts IV through IX.

**Background**

iBiquity is a developer and owner of the intellectual property underlying the HD Radio™ technology for digital radio broadcasting. Am. Compl. ¶ 12. In order to have its technology adopted as a standard, iBiquity bound itself to the National Radio Systems Committee's ("NRSC") requirement to license the patents covering the technology to all manufacturers of HD Radio receivers on reasonable and non-discriminatory ("RAND") terms. *Id.* Thus, on June 28, 2005, iBiquity executed a nonexclusive agreement with Siemens VDO Automotive Corporation ("Siemens"), under which it licensed intellectual property for the HD technology to Siemens in exchange for royalty payments. *Id*. ¶ 13.

In 2007, Continental merged with Siemens and became a successor-in-interest to the license agreement with iBiquity. *Id*. ¶¶ 13-14; Def.'s Mem. Supp. Mot. Dismiss 2-3. Continental is an equipment manufacturer for major automobile manufacturers. Am. Compl. ¶ 7. It supplies head-end units that can receive and decode HD Radio signals for use in a variety of vehicles. *Id.* ¶¶ 7-8. In order to make these units, Continental buys HD Radio semiconductor components from third parties, who are also iBiquity licensees. *Id.* ¶¶ 10, 30.

Initially, Continental paid royalties to iBiquity under the license agreement. Am. Compl. ¶ 17; Def.'s Mem. Supp. Mot. Dismiss 3. But in 2013 it stopped, arguing that royalties should be based not on the price of the entire head-end unit Continental sells to its customers, but rather only on those components that implement technology patented by iBiquity. Am. Compl. ¶¶ 17-

19; Def.'s Mem. Supp. Mot. Dismiss 3. The parties attempted to negotiate to resolve the dispute, but they failed to come to an agreement. Def.'s Mem. Supp. Mot. Dismiss 3.

Unable to resolve their dispute, on February 7, 2014, iBiquity sued Continental for breach of contract in the Maryland state court. Def.'s Mem. Supp. Mot. Dismiss 3, Ex. A, Compl., iBiquity v. Cont'l, No. 386953V. Just over a month later, Continental filed the present action in this Court.

## Analysis

### I. Subject Matter Jurisdiction

There is no diversity between the parties as Continental Automotive Systems, Inc., and iBiquity are Delaware corporations. Am. Compl. ¶¶ 3-4. Accordingly, Continental asserts that the Court has jurisdiction over this action pursuant 28 U.S.C. §§ 1331, 1338, and 2201. *Id.* ¶ 5. Section 1331 establishes federal question jurisdiction over civil actions "arising under" the laws of the United States. 28 U.S.C. § 1331. And Section 1338 provides that district courts have original jurisdiction of "any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338. Finally, 28 U.S.C. § 2201 allows a plaintiff to bring declaratory judgment action in federal court. 28 U.S.C. § 2201.

iBiquity moves to dismiss Counts I through III – the only claims alleged under federal law – for lack of subject matter jurisdiction pursuant Rule 12(b)(1). Def.'s Mem. Supp. Mot. Dismiss 5-13. In short, iBiquity argues that patent exhaustion (Count I) and patent misuse (Count II) do not arise under federal patent law because they are not proper independent claims but, rather, are defenses to an anticipated patent infringement suit. *Id.* iBiquity also contends that Continental's claim seeking a declaratory judgment of patent rights (Count III) does not

arise under federal patent law because it is merely a state law breach of contract claim in disguise, seeking to interpret the license agreement in light of certain public statements by iBiquity. *Id.*

### A. Legal Standard

An attack on subject matter jurisdiction pursuant to Rule 12(b)(1) may be facial or factual. *Stroman Realty, Inc. v. Grillo,* 438 F. Supp. 2d 929, 932 (N.D. Ill. 2006). When a defendant makes a facial attack, it contends that allegations in the pleadings are insufficient on their face to support federal jurisdiction. *See Freiburger v. Emery Air Charter,* 795 F. Supp. 253, 256 (N.D. Ill. 1992). In such cases, "allegations [in the complaint] are taken as true and construed in a light most favorable to the complainant." *See Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed. Cir. 1993). But when a defendant makes a factual attack, courts may look beyond the jurisdictional allegations in the complaint and "consider relevant evidence in order to resolve the factual dispute" as to whether subject matter jurisdiction exists. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988); *see also Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir. 1993) (*per curiam*). In either case, the party seeking to invoke subject matter jurisdiction bears the burden of establishing it. *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342 n.3 (2006); *Cedars-Sinai Med. Ctr.*, 11 F.3d at 1583; *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 445 (7th Cir. 2009).

Federal courts have exclusive jurisdiction over civil actions "arising under" federal patent law under 28 U.S.C. § 1338(a). This occurs when a well-pleaded complaint establishes either that (1) "federal patent law creates the cause of action" or that (2) "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988). But in declaratory judgment cases "[w]here the

complaint . . . seeks in essence to assert a defense to an impending or threatened . . . action, it is the character of the *threatened action*, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." *Pub. Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 248 (1952) (emphasis added). Hence, courts have to examine "the declaratory *defendant's* hypothetical well-pleaded complaint to determine if subject matter jurisdiction exists." *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1349 (Fed. Cir. 2011); *see also Cnty. Materials Corp. v. Allan Block Corp.,* 502 F.3d 730, 734 (7th Cir. 2007). And where it is impossible for a declaratory judgment defendant to bring a claim "arising under" federal patent law, federal courts lack subject matter jurisdiction. *See, e.g., ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG*, 541 F.3d 1373, 1376-77 (Fed. Cir. 2008) (holding that district court lacked subject matter jurisdiction where the declaratory judgment defendant could not bring another infringement action against plaintiff unless the dismissal of defendant's earlier infringement action was vacated by the court); *Cnty. Materials Corp.*, 502 F.3d at 733-34 (holding that the case does not arise under patent laws where the case's issue was whether licensee could sell a non-infringing product despite the presence of a covenant not to compete); *Speedco, Inc. v. Estes*, 853 F.2d 909, 913 (Fed. Cir. 1988) (holding that the district court lacked subject matter jurisdiction where declaratory judgment plaintiff could only be sued for breach of contract, not for patent infringement under federal law).

**B. Patent Exhaustion and Patent Misuse Claims (Counts I and II)**

The Court begins its analysis with the patent exhaustion and patent misuse claims. iBiquity argues that the claims are merely defenses and not affirmative causes of action and, as such, they do not "arise under" federal patent law. Def.'s Mem. Supp. Mot. Dismiss 6-8. Continental responds that this argument is irrelevant "[b]ecause subject matter jurisdiction in a

declaratory judgment action is based on the claims that could be brought by the declaratory judgment defendant, rather than the declaratory judgment plaintiff." Pl.'s Resp. Mot. Dismiss 5. Moreover, Continental asserts that patent misuse may be asserted as an affirmative claim. *Id.*

iBiquity's patent exhaustion argument centers around the Federal Circuit case *ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG*. Def.'s Mem. Supp. Mot. Dismiss 6-7. ExcelStor, a licensee, sought declaratory judgment against Papst, a licensor, for the alleged violation of the patent exhaustion doctrine. *ExcelStor Tech., Inc.*, 541 F.3d at 1375. Importantly, prior to that action, Papst had sued ExcelStor for patent infringement, but the case settled and was dismissed with prejudice. *Excelstor Tech., Inc. v. Papst Licensing GMBH & Co. KG*, No. 07 C 2467, 2007 WL 3145013, at *4 (N.D. Ill. Oct. 24, 2007). Hence, "Papst could not bring another infringement action against ExcelStor unless the dismissal of Papst's earlier infringement action against ExcelStor were vacated by the court." *ExcelStor Tech., Inc.*, 541 F.3d at 1376.

This impossibility of an infringement suit resulted in lack of subject matter jurisdiction in *ExcelStor* because the "claims fail[ed] to meet either prong of the *Christianson* test." *Id*. First, the "patent law [did] not create the cause of action" in the case. *Id*. This is unsurprising considering that patent exhaustion could only be raised as a defense to hypothetical state law claims in that case. And "a case raising a federal patent law defense does not, for that reason alone, 'arise under' patent law." *Id.* (quoting *Christianson*, 486 U.S. at 809); *see also Speedco, Inc.*, 853 F.2d at 913 (holding that the district court lacked subject matter jurisdiction where patent invalidity could only be raised by the declaratory judgment plaintiff as an element of the defense).

Next, the Federal Circuit held that the claims "[did] not require resolution of a substantial question of federal patent law" and, thus, failed *Christianson*'s second prong. *ExcelStor Tech., Inc.*, 541 F.3d at 1376. The court explained that "[t]he exhaustion doctrine prohibits patent holders from selling a patented article and then invoking patent law to control postsale use of the article." *Id.* (internal quotations omitted). But ExcelStor failed to allege that "Papst invoked the patent laws to control the post-sale use" of articles as "Papst could not bring another infringement action against ExcelStor." *Id.* Thus, ExcelStor claimed only that "Papst violated the patent exhaustion doctrine by collecting two different royalties from the same patented product." *Id.* (internal quotations omitted). And even though such royalty collection might be "prohibited by the terms of the individual license agreements, or . . . prove to have been fraudulent," the "patent law is not a necessary element of such determinations." *Id.* at 1377.

Similar to the patent exhaustion claim in *ExcelStor*, a patent misuse claim might not arise under patent laws when there is no looming infringement action against the declaratory judgment plaintiff. *See Cnty. Materials Corp.*, 502 F.3d at 733-34. Thus, in *County Materials*, the plaintiff had an exclusive production agreement with the defendant that contained a covenant not to compete. *Id.* at 733. The covenant forbade the plaintiff from manufacturing competing products for eighteen months after the termination of the agreement. *Id.* However, shortly after ending the agreement, the plaintiff began producing competing, allegedly non-infringing products. *Id.* Hence, the defendant threatened to sue to enforce the non-compete covenant – but the plaintiff sued first, seeking declaratory judgment that the covenant not to compete was unenforceable due to patent misuse. *Id.* at 732.

In *County Materials*, as in *ExcelStor,* the hypothetical threatened action by the declaratory judgment defendant would have been a state contract or license claim. *See id.* at

7

733-34 (stating that the patent misuse claim was about "the enforceability of a contract or license agreement"). Thus, federal law did not create the cause of action, and the declaratory judgment defendant's right to relief in the hypothetical, well-pleaded complaint did not depend on the resolution of a substantial question of patent law. *Id.* Accordingly, the *County Materials* court held that "[t]he presence of a federal defense (here, patent misuse) [was] irrelevant to jurisdiction." *Id.* at 734 (quoting *Scheiber v. Dolby Labs., Inc.,* 293 F.3d 1014 (7th Cir. 2002)).

The present case, however, differs from *ExcelStor* and *County Materials*. Continental stopped making royalty payments in 2013. Am. Compl. ¶¶ 17-19; Def.'s Mem. Supp. Mot. Dismiss 3. And iBiquity allegedly threatened Continental with a patent infringement suit. Am. Compl. ¶ 20. Although iBiquity claims that it cannot file a patent infringement claim against Continental because "the parties are now bound to the Agreement until June 28, 2015," it does not state that Continental resumed its payments. Def.'s Sur-reply Mem. Supp. Mot. Dismiss. 1. Thus, iBiquity does not assert that it cannot terminate its license and then sue Continental for infringement. Instead, iBiquity only alleges that it "elected not to exercise its right to terminate the Agreement" after Continental had stopped making payments and had failed to remedy the non-payment within sixty days as required by the license. Def.'s Repl. Mem. Supp. Mot. Dismiss 4.

Given these circumstances, this Court cannot equate the present case to *ExcelStor* and *County Materials*. The situation is more in line with *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 875 (Fed. Cir. 1983). There, the licensee stopped making payments under its agreement with the patentee.[1] The patentee then filed suit in a state court, but did not allege patent infringement. *Id.* at 875-76. In return, the licensee brought a declaratory judgment action in a federal court,

---

[1] Similar to the present case, relevant license provisions in *C.R. Bard* provided the defaulting party sixty days to cure the default. 716 F.2d at 881 n.5.

alleging patent invalidity and unenforceability. *Id.* at 876. The district court, however, dismissed the complaint, holding that it lacked subject matter jurisdiction. *Id.* The Federal Circuit reversed, noting that the licensee "had ceased payment of royalties under the agreement to the licensor and patentee" and that "[t]his was a material breach of the agreement that, under the very terms of the agreement, enabled [patentee] to terminate the agreement." *Id.* at 880-81. Hence, the patentee "could at any time take action against [licensee] by bringing an infringement suit" as manufacturing of the products covered by the patent had not ceased. *Id.* at 881; *see also Medtronic, Inc. v. Mirowski Family Ventures, LLC,* 134 S. Ct. 843, 848 (2014) (stating that the relevant question is not whether "an infringement suit would be unlikely," but rather "the nature of the threatened action in the absence of the declaratory judgment suit"). Thus, in *C.R. Bard*, the licensee's declaratory judgment action was "not in defense of the state court action brought but in defense of an actual federal controversy 'arising under' the patent law," 716 F.2d at 882, and subject matter jurisdiction was found to exist under 28 U.S.C. § 1338(a). *Id.*

Similar to *C.R. Bard*, given Continental's failure to make its licensing payments, iBiquity's hypothetical well-pleaded complaint could contain a patent infringement claim against Continental. And "it is well-established that a claim for infringement arises under federal law." *ABB Inc.*, 635 F.3d at 1350. As such, this Court is satisfied that it has subject matter jurisdiction over the declaratory judgment claims for patent exhaustion and misuse.[2]

### C. Declaratory Judgment of Patent Rights Claim (Count III)

Turning to Count III, which seeks a declaratory judgment of patent rights, iBiquity argues that Count III "asks this Court to interpret the parties' License Agreement in light of

---

[2] This Court's analysis of subject matter jurisdiction applies only to *declaratory judgment* claims for patent exhaustion and misuse. Our ruling does not address whether or when it is appropriate to raise patent exhaustion and misuse defenses to state law claims.

representations made by iBiquity that it would license its patents on RAND terms" and that such "[c]ontract disputes, even those involving patents, do not arise under federal law." Def.'s Mem. Supp. Mot. Dismiss 8. Furthermore, according to iBiquity, Continental failed to plead a case or controversy with respect to federal patent law or patent rights, and the only "definite and concrete" dispute under Count III is a breach of contract action. *Id.* 10.[3]

Continental does not address iBiquity's arguments regarding Count III.[4] Pl.'s Resp. Mot. Dismiss 3-5. In the absence of any arguments, the Court looks only to the allegations in the Amended Complaint. In this self-styled declaratory judgment claim, Continental alleges that it "paid royalties to iBiquity under the terms of the parties' license agreement." Am. Compl. ¶ 38. Continental posits that "iBiquity made affirmative statements and promises to the HD Radio community that it would license its standards essential patents under reasonable and non-discriminatory terms" and that "Continental has attempted to license the patents from iBiquity under such terms." *Id.* ¶ 39. "Thus, Continental's continued activities are authorized under the U.S. Patent Laws, 35 U.S.C. §271(a) in view of the rights granted to Continental under the license agreement and in view of iBiquity's RAND commitments." *Id.* ¶ 40. But, according to the Amended Complaint, "iBiquity has threatened Continental with allegations that Continental is in breach of the parties' license agreement and has refused to negotiate a license under RAND terms." *Id.* ¶ 41. Hence, Continental alleges that "there exists between the parties a definite and

---

[3] iBiquity also analogizes the present case to *Milprint, Inc. v. Curwood, Inc* 562 F.2d 418 (7th Cir. 1977), which held that "where the licensor stands on the license agreement and seeks contract remedies, even an allegation of infringement will not create federal jurisdiction, for the existence of the license precludes the possibility of infringement." *Milprint, Inc.,* 562 F.2d at 420. However, *Milprint* was decided prior to the creation of the Federal Circuit and prior to the Supreme Court decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). In *MedImmune*, the Supreme Court held that the licensor "was not required, insofar as Article III is concerned, to break or terminate its [] license agreement before seeking a declaratory judgment in federal court that the underlying patent is invalid, unenforceable, or not infringed." *Id.* at 137. And even prior to *MedImmune*, the Federal Circuit held that there is federal jurisdiction and an actual case or controversy where a licensor signed an affidavit that it did not intend to sue for infringement, but where, as in the present case, it demonstrated its willingness to enforce patent rights by suing the licensee to recover royalties in state court. *C.R. Bard, Inc.*, 716 F.2d at 880-82.

[4] Continental only addresses iBiquity's arguments relating to *Milprint. See* Pl.'s Resp. Mot. Dismiss 3-5.

concrete dispute touching the legal relations of the parties having adverse interests, *i.e.*, their rights under patent laws of the United States." *Id.* ¶ 42. Finally, Continental posits that "[t]his Court can declare the respective rights of the parties." *Id.* ¶ 43.

This Court reads Count III to be a request for interpretation of the license in light of iBiquity's representations that it would license its patents on RAND terms. The hypothetical, well-pleaded complaint by iBiquity would be a contract claim. Thus, federal patent law would not create the cause of action in the hypothetical complaint and iBiquity's right to relief would not depend on the resolution of a substantial question of federal patent law. Therefore, such action would not arise under the patent laws. *See, e.g., Microsoft Corp. v. Motorola, Inc.*, 564 F. App'x 586, 589-90 (Fed. Cir. 2014) (holding that it is plausible to conclude that action alleging that patentee improperly refused to offer licenses for the use of its standard essential patents on RAND terms does not arise under the patent laws).

Moreover, "a typical RAND term is a contractual covenant of the granting participant, pursuant to which that entity agrees that it will, at some point in the future, grant a license on reasonable and nondiscriminatory terms to any requesting implementer of [the] applicable standard." *In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 915 (N.D. Ill. 2013) (internal quotations omitted). And "the fact that patent issues are relevant under state contract law to the resolution of a contract dispute cannot possibly convert a suit for breach of contract into one 'arising under' the patent laws as required to render the jurisdiction of the district court based on section 1338." *Speedco, Inc.*, 853 F.2d at 913. Thus, the federal courts "have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy." *Gunn v. Minton*, 133 S. Ct. 1059,

1068 (2013) (internal quotations omitted).  Therefore, Count III does not arise under the patent laws and does not, in and of itself, provide a basis for subject matter jurisdiction.

## II.     Motion to Dismiss for Failure to State a Claim

Next, the Court evaluates whether Counts I and II fail to state a claim.  iBiquity argues that "[i]n addition to the lack of subject matter jurisdiction, Counts I and II do not state an affirmative cause of action."  Def.'s Repl. Mem. Supp. Mot. Dismiss 5.  It contends that both patent exhaustion and patent misuse are defenses and not affirmative causes of action.  Def.'s Mem. Supp. Mot. Dismiss 6-7.  Continental does not rebut that patent exhaustion can only be a defense.  Pl.'s Resp. Mot. Dismiss 2-5.  But it insists that courts "have allowed declaratory judgment . . . claims asserting patent misuse affirmatively."  *Id.* 5.

### A.  Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), Continental's complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted). The complaint's factual allegations must at least "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  And courts must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in Continental's favor.  *See TrinCo Inv. Co. v. United States,* 722 F.3d 1375, 1377 (Fed. Cir. 2013); *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008).

### B.  Patent Exhaustion and Misuse as Claims

As an initial matter, the Court agrees with iBiquity that "patent exhaustion is a defense to patent infringement, not a cause of action."  *See ExcelStor Tech., Inc.*, 541 F.3d at 1376. Accordingly, the Court grants the motion to dismiss Count I for failure to state a claim.

However, the patent misuse claim issue cannot be dispatched so lightly – courts disagree on whether patent misuse can constitute a claim, not just a defense. *See, e.g., Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.,* No. 05 C 4088, 2005 WL 3557947, at *6 (N.D. Ill. Dec. 26, 2005) (allowing a patent misuse declaratory judgment claim while acknowledging that other courts rejected that patent misuse can be a counterclaim). This disagreement stems from divergent readings of *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419 (Fed. Cir. 1997).

In *Braun*, the patentee sued defendants for patent infringement and, in response, defendants asserted patent misuse as an affirmative defense and as a basis for a declaratory judgment. *B. Braun Med. Inc. v. Abbott Labs.*, 892 F. Supp. 115, 116 (E.D. Pa. 1995), *aff'd in part, vacated in part by B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d at 1419. At trial, the jury found no patent infringement, but it found that the patentee had misused the patent. *Id.* On the basis of this verdict, the court held a second trial to determine damages caused by the patent misuse. *See B. Braun Med., Inc.*, 124 F.3d at 1422. The jury found that the patent misuse did not cause any damages to defendants. *Id.* After the district court entered judgment on all issues, both parties appealed to the Federal Circuit the portions of the judgment that were adverse to them. *Id.* at 1423.

On appeal, the Federal Circuit first explained that the patent misuse is "an extension of the equitable doctrine of unclean hands, whereby a court of equity will not lend its support to enforcement of a patent that has been misused." *Id.* at 1427. And, "[w]hen used successfully, this defense results in rendering the patent unenforceable until the misuse is purged." *Id.* But "[i]t does not . . . result in an award of damages to the accused infringer." *Id.* Next, the Federal Circuit clarified that the Declaratory Judgment Act was not designed "to allow a declaratory judgment plaintiff to avoid the requirements imposed by the substantive law as a predicate to

obtaining [coercive] relief." *Id.* at 1428.  Consequently, "the defense of patent misuse may not be converted to an affirmative claim for damages simply by restyling it as a declaratory judgment counterclaim" – in other words, "monetary damages may not be awarded under a declaratory judgment counterclaim based on patent misuse, because patent misuse simply renders the patent unenforceable." *Id.* (internal quotations omitted).

District courts are split as to how to interpret *B. Braun*.  Some courts view *B. Braun* as allowing an affirmative claim of patent misuse so long as the plaintiff does not seek damages. *See, e.g., Rosenthal Collins Grp., LLC,* 2005 WL 3557947, at *6 ("we read *B. Braun* to allow a patent misuse declaratory judgment claim, but allow it solely to enjoin defendant from asserting a patent infringement claim against plaintiff"); *Internet Pipeline, Inc. v. Aplifi, Inc.*, No. CIV.A. 10-6089, 2011 WL 4528340, at *3 (E.D. Pa. Sept. 29, 2011) ("there can be a counterclaim for patent misuse in the appropriate case," but it "may only seek declaratory relief, not monetary damages").

Others read *B. Braun* as rejecting patent misuse as an affirmative claim regardless of whether it seeks a declaratory, injunctive, or compensatory relief.  *See, e.g., Depuy Inc. v. Zimmer Holdings, Inc.,* 343 F. Supp. 2d 675, 684 n.4 (N.D. Ill. 2004) ("patent misuse is an affirmative defense, not a counterclaim"); *PSN Ill., Inc. v. Ivoclar Vivadent, Inc.*, No. 04 C 7232, 2005 WL 2347209, at *3 (N.D. Ill. Sept. 21, 2005) ("[t]he Federal Circuit held in *B. Braun* . . . that patent misuse could not be brought as a claim for damages because it is an affirmative defense"); *Cummins, Inc. v. TAS Distrib. Co.*, 676 F. Supp. 2d 701, 705 n.2 (C.D. Ill. 2009) ("[i]t appears that patent misuse is only a defense to a patent-infringement claim, not an affirmative basis for relief"); *Bernhardt L.L.C. v. Collezione Europa USA, Inc.*, No. CIV. 101CV00957, 2002 WL 1602447, at *2 (M.D.N.C. July 3, 2002) ("patent misuse is not an affirmative claim,

but rather a defense"); *Semco, Inc. v. Exco Techs. Ltd.*, No. 3:06 CV 2045, 2007 WL 2693268, at *2 (N.D. Ohio Sept. 12, 2007) ("[p]atent misuse is an affirmative defense to a patent holder's claim of infringement," "[i]t cannot be the basis for a cause of action").

Regardless of the interpretation, there is no disagreement among the courts that patent misuse doctrine cannot be asserted for monetary relief. *See B. Braun Med., Inc.*, 124 F.3d at 1428. Accordingly, Continental cannot use its patent misuse claim as a basis for compensatory damages, as Continental seeks to do here. Am. Compl. 15.

Moreover, after considering the various cases, this Court concludes that patent misuse cannot be brought as a stand-alone cause of action. First, *B. Braun* cannot be read as allowing such a stand-alone cause of action. There, patent misuse was raised in response to a patent infringement action and not as a stand-alone cause of action as in the present case. *B. Braun Med. Inc. v. Abbott Labs.*, 892 F. Supp. 115, 116 (E.D. Pa. 1995). Thus, the Federal Circuit had no occasion to speak to whether the defendant in *B. Braun* could have appropriately brought a stand-alone declaratory judgment claim of patent misuse. Second, even after *B. Braun*, the Federal Circuit has repeatedly defined patent misuse as a defense, rather than a cause of action in its own right. *See Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997) ("[p]atent misuse is an affirmative defense to an accusation of patent infringement"); *U.S. Philips Corp. v. Int'l Trade Comm'n,* 424 F.3d 1179, 1184 (Fed. Cir. 2005) ("[p]atent misuse is an equitable defense to patent infringement"). Third, in cases where district courts have allowed a patent misuse claim, the claim has been brought with accompanying patent invalidity or non-infringement claims and in opposition to infringement claims. *See, e.g., Rosenthal Collins Grp., LLC*, 2005 WL 3557947, at *1 (plaintiff also brought an action requesting declaratory judgment of patent invalidity and non-infringement and defendant asserted an infringement counterclaim);

*Internet Pipeline, Inc.*, 2011 WL 4528340, at *1 (stating that plaintiff sued defendant for infringement and defendant raised affirmative defense of patent invalidity, among others); *Semco, Inc.,* 2007 WL 2693268, at *2 ("[a]lthough courts have allowed patent misuse claims to be presented as counterclaims, these have been limited to circumstances where patent infringement claims were also involved").

Therefore, the Court dismisses the patent exhaustion and patent misuse claims with prejudice for failure to state a claim upon which relief can be granted.[5]

## III. Other Claims (Counts III-IX)

The Court next moves to the analysis of the remaining claims. It is true that courts may exercise discretion to retain supplemental jurisdiction over state law claims even after it dismisses the claims over which it asserts original jurisdiction. 28 U.S.C. § 1367(c)(3) (2012). But courts may decline to exercise such jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." *Id.* "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). This is exactly the case here – with the patent exhaustion and misuse claims dismissed, the only claims remaining are those that do not "arise under" the patent laws and, thus, are more properly litigated in state court. Therefore, the Court exercises its discretion to decline supplemental jurisdiction over the remaining state law claims.

---

[5] Because the Court dismisses these claims on the basis discussed above, it need not determine whether Continental's patent exhaustion and misuse claims are factually plausible.

**Conclusion**

For the foregoing reasons, the Court denies iBiquity's motion to dismiss for lack of subject matter jurisdiction over declaratory judgment claims for patent exhaustion and misuse (Counts I and II), grants the motion to dismiss for failure to state the claim with regard to these counts, and declines to exercise supplemental jurisdiction over the remaining claims (Counts III-IX) [doc. no. 23]. This case is hereby terminated.

**SO ORDERED**  **ENTERED:  2/26/15**

**John Z. Lee**
**United States District Judge**